**GENERAL ACCIDENT FIRE & LIFE AS-
SURANCE CORPORATION,
Limited, Appellant,**

**v.**

**Willie CALLAWAY, Appellee.**

**No. 15264.**

Court of Civil Appeals of Texas.

Houston (1st Dist.).

May 2, 1968.

Rehearing Denied June 27, 1968.

Fulbright, Crooker, Freeman, Bates & Jaworski, William H. Payne, Houston, for appellant.

Walter L. Lambright, Houston, for appellee.

COLEMAN, Justice.

This is a workmen's compensation case. The jury found that appellee was injured while he was acting in the course and scope of his employment with Dave's Appliance & Furniture Company and also with S. & K. Lumber Company. Appellant contends that such finding is not supported by the evidence as to it; that the evidence does not support the wage rate found by the jury; and that it was prejudiced in its defense of this cause by the failure of the trial court to permit it to present to the jury the fact that appellee and a co-defendant agreed to a settlement during the course of the trial.

A judgment was entered for appellee based on total and permanent disability and a wage rate of $10.00 per day. The judgment entered was in the sum of $6,443.32 against appellant and in the same amount against North River Insurance Company, the defendant with which appellee has settled.

General Accident Fire & Life Assurance Corporation, Limited, will be referred to as General Accident, and North River Insurance Company as North River. Dave's Appliance & Furniture Company, a corporation, had a policy of Workmen's Compensation with General Accident. S. & K. Lumber Company, a corporation, carried its workmen's compensation with North River. Leon Samet was president of Dave's Appliance & Furniture Company, hereinafter called Dave's Appliance, and was treasurer of S. and K. Lumber Company, hereinafter called S. & K. He was a major stockholder in both corporations. For some purposes a joint office was maintained in a building owned by Mr. Samet and used by Dave's Appliance as a retail outlet. The books of both corporations were kept by a single accountant, and pay checks were delivered to the employees of both corporations from the joint office. There is evidence that S. & K. acted as contractor in building rental units for Mr. Samet and Mr. Knighton, his associate in S. & K. There is evidence that Dave's Appliance rented furniture in addition to selling furniture and appliances.

There is evidence that in the first part of 1964, Joe Byars, an employee of Dave's Appliance, had a contract for maintenance

work for certain rent houses, apparently owned by Mr. Samet and by Mr. Knighton. Mr. Byars hired appellee to do maintenance work on these houses. Thereafter, to the time of this trial, it appears that this maintenance work was being done by employees of one of the corporations. At the trial Byars testified that he, as an employee of Dave's Appliance, hired appellee to work for Dave's Appliance in doing maintenance work on these rental units and in collecting rent. Mr. Samet, president of Dave's Appliance, testified that he hired appellee to do this work for S. & K.

Appellee's immediate supervisor was Byars. He received his instructions from him. He did general maintenance work on two hundred or more rent houses, and also collected rents. He receipted for these rents on forms furnished by Dave's Furniture and turned the money collected over to its employees. A receipt, representative of those given the tenants by appellee's wife, who usually did this work for appellee, recites the receipt of $20.00 "on account"—"rent and furniture"—"for-rent furniture". This receipt is a printed form headed "Dave's Furniture and Appliances." When appellee purchased supplies, he usually got them from S. & K. and he took the bills to Dave's.

Appellee testified that he worked part time in 1963 and part of 1964; that when he was hired full time he was told by Joe Byars that he would be working for Dave's Appliance. He did painting, plumbing, yard work, windows, just about anything that needed to be done. He was paid $100.00 a month in cash, given the use of a house (owned by Mr. Samet), and a truck (owned by S. & K.). Appellee testified that the house had rented for $60.00 a month. He testified that he was free to use the truck on his personal business, and that he had no other car. If he used the truck too much on personal affairs, he would buy some gasoline for it.

Prior to the trial Byars had given deposition testimony, and had made an affidavit,

in which he said that he employed appellee to work for S. & K. There was other evidence that appellee was employed by S. & K., but the value of much of it depended on the testimony of Mr. Samet. A payroll sheet was identified by him as being a record of appellee's earnings as shown by the records of S. & K., although the sheet had on it neither the name of appellee nor that of S. & K. It shows $50.00 paid on 1/16/65, then $50.00 on 6/15/65, and 6/30/65; it shows $50.00 only in July, 1965, $50.00 on 8/2 and 8/16/65; $50.00 on 9/1 and 9/15/65 and $20.00 on 9/29/65. Certain ledger sheets were introduced as being the payroll sheets for all of the employees of Dave's Appliance. No sheet for appellee was included. While Mr. Dean kept the books for both corporations, he was not called to testify. The records introduced as being Dave's Appliance records were on a slightly different form from the one sheet introduced as an S. & K. payroll record. The Dave's Appliance records were neatly kept, and had the employee's name and address on the beginning page of that employee's record, as well as having his name opposite each entry applicable.

There was testimony that appellee's salary was not included in the payroll on which the premium for the workmen's compensation policy for Dave's Appliance was figured. There were no records introduced concerning the S. & K. employees, except the one sheet mentioned. The first report of injury filed by S. & K. showed appellee as a part time employee, who, at the time the report was filed in September, had been employed by S. & K. for four months. There is considerable evidence that he had been working regularly at the same job for some employer for more than a year, during which time he received his directions from Byars, who was employed by Dave's Appliance, and was paid by check from the building occupied by Dave's Appliance. The cancelled checks are not in evidence.

While his first claim for compensation filed with the Industrial Accident Board

listed S. & K. as the only employer, the claim was amended twice and both S. & K. and Dave's Appliance were listed as employers on the amended claims.

■ The evidence was sufficient to require the trial court to submit Special Issues Nos. 3 and 4, concerning whether or not Willie Callaway was an employee of Dave's Appliance on the date of his injury, and concerning whether or not he was acting in the course and scope of his employment at the time of his injury.

There is testimony that appellee had picked up his orders for the day of the accident the preceding day; that he was on his way to pick up his helper before driving to Studewood, where "they" had two places, when the accident happened. He had been given directions to do this particular work by Leon Samet. He was on duty all the time; whenever anything needed to be done, he was called. He worked six and seven days a week, and sometimes at night. Such testimony supports the answer concerning course and scope of employment, if the answers made by the jury to the effect that appellee was employed by both companies are supported by sufficient evidence.

■ The testimony, documentary evidence, and circumstances detailed support the theory of joint employment. Appellant's contention that there is no competent evidence to support the answers made by the jury to these issues cannot be sustained.

The jury found that appellee worked at least 210 days in the same employment just prior to the date of injury and that the average daily wage earned in such employment during the days when so employed was $10.00. In connection with this issue the jury was instructed that "wages include other advantages which can be estimated in money which the employee receives from the employer as part of his remuneration."

One ground of appellant's motion for new trial complained of the error of the trial court in giving the jury the instruction permitting it to "estimate" the value of other advantages in money, rather than requiring it to "evaluate" such advantages. There is no merit to this point. The instruction given uses, so far as applicable, the language of Article 8309, Sec. 1(4), Vernon's Ann.Civ.St., which provides

"Said wages shall include the market value of board, lodging, laundry, fuel, and other advantage which can be estimated in money, which the employee receives from the employer as a part of his remuneration. Any sums, however, which the employer has paid to the employee to cover any special expenses entailed on him by the act of his employment shall not be included."

Appellee received a cash salary of $100.00 per month. There is evidence that appellee received from his employer as a part of his renumeration lodging having a market value of $60.00 per month. There is evidence that appellee also received the use of a truck in traveling to and from work and for purely personal purposes as a part of his remuneration. This clearly is an advantage which can be estimated in money. The only evidence of the market value of this advantage is the testimony of appellee that he figured his pay to be $60.00 or $65.00 per week counting his use of the house and the truck. It appears that he considered the value of the use of the truck to be $20.00 to $25.00 per week. There was an objection to this testimony on the ground that it constituted a conclusion of the witness. This objection was overruled, and no point has been presented complaining of this action of the court.

Today the use of automobiles and trucks is so widespread that most people are acquainted in some degree with the cost of new and used automobiles, as well as the cost of the operation and maintenance of such vehicles. Appellee gave his opinion as to the value of the use of the truck. In the absence of a proper objection, this testimony cannot be disregarded as having no

probative value. It constitutes sufficient support for the answer made by the jury to Special Issue No. 14.

■ The trial court did not abuse his discretion by limiting the voir dire examination of appellee by which appellant hoped to show that appellee was not qualified to testify as to the identity of his employer. The questions propounded on voir dire were directed at the information on which appellee based his answer and were pertinent only on the point of the weight to be given the testimony of the witness rather than to its admissibility. In any event there was no prejudicial error since the testimony relative to this point was fully developed before the jury on cross-examination.

During the course of the trial appellee's counsel was called to the witness stand. Appellant's counsel, in the presence of the jury, asked: "Is it not true that you and Mr. Jennings (counsel for S. & K.) have arrived at an agreement as to the manner in which this lawsuit should be tried?"

After an objection was made to the question, the trial judge removed the jury from the room and permitted questions. It was developed that appellee, and his counsel, had agreed with North River, and its counsel, to settle the case as between these parties for the sum of $5,000.00. A tentative agreement, subject to the approval of their respective clients, was reached between the attorneys on Monday, apparently at the conclusion of the proceedings for the day. According to Mr. Jennings' testimony, he obtained the approval of his client on Tuesday morning. There was a firm oral agreement for settlement after the first day of trial, and possibly before the testimony of the first witness was completely taken. All the testimony is to the effect that the agreement was reached after the jury was selected.

■ The fact that a settlement had been reached between these two parties was not allowed to be presented to the jury. Appel-

lant contends that this was prejudicial for several reasons.

The first reason advanced is concerned with jury selection. This point will not be considered since the evidence developed before the court shows that the agreement was reached after the jury was selected. In addition Mr. Lambright denied that he acted jointly with Mr. Jennings in striking the jury.

The second argument stresses the fact that appellee's attorney demonstrated during the course of the trial a steady and consistent "belief" that the injured workman was employed by appellant's insured. Since so far as the jury knew, he was neutral, as between the defendants, it is argued that the jury should have been made aware of the financial interest appellee and his counsel had in securing a finding of employment by Dave's Appliance.

None of the testimony of appellee's attorney was admitted over the objection of appellant, and no motion was made to strike this testimony. He gave no factual testimony calculated to assist the jury in determining the identity of appellee's employer. A lawyer for an active litigant is supposed to be devoted to the promotion of the best interest of his client. It can hardly be doubted that this is known to jurors and that the jury in this case discounted the tactics and argument of appellee's counsel.

Appellant then contends that Joe Byars changed his testimony from that given by deposition favorable to appellant by reason of having been advised of the settlement. Byars was employed by appellant's assured; his testimony at the trial directly contradicted not only his previous deposition testimony, but also the testimony given by the president of the company for which he worked. It is suggested, with no basis in the evidence, that Byars changed his testimony because of friendship with appellee and a realization that he would be able to recover further compensation only in the event Dave's Appliance was found to be the employer.

Appellant contends that the inactivity of the attorney for North River created an impression on the jury that the claimant was entitled to all that he claimed. There was little dispute in the testimony as to the nature and extent of claimant's injury, or as to the compensation received by him for his services. The conflict arose in determining what the testimony proved. No complaint was made that the attorney for North River made argument prejudicial to appellant. His argument, if indeed he made one, is not before us.

Appellant contends that the fact of settlement should have been admitted as an admission against the interest of North River. It was not an admission that S. & K. was the sole employer. The amount agreed upon was less than one-half of the amount appellee contended was due. The agreement was not in writing, and its terms were not fully developed. Neither had this agreement been approved by the trial court as is required by the Workmen's Compensation Act in the case of a compromise settlement. Unless the compromise agreement could be construed as evidence that North River's assured was the sole employer, the situation would have appeared no different to the jury merely because one of the parties, alleged to be jointly liable, settled.

The rule that evidence of compromise or offer to compromise is generally inadmissible insofar as it may tend to establish liability is applicable under the facts of this case. St. Paul Fire & Marine Ins. Co. v. Murphree, 163 Tex. 534, 357 S.W.2d 744 (1962); Skyline Cab Co. v. Bradley, 325 S.W.2d 176 (Tex.Civ.App., Houston 1959, ref., n. r. e.); American General Ins. Co. v. Fort Worth Transit Co., 201 S.W.2d 869 (Tex.Civ.App., Ft. Worth 1947). In any event we do not believe that the error, if any, in refusing to permit evidence of the settlement to go before the jury, was calculated to cause, or probably did cause, the rendition of an incorrect judgment in this case. Rule 434, Texas Rules of Civil Procedure.

The judgment of the Trial Court is affirmed.

## On Motion for Rehearing

In our original opinion we stated that the only evidence of the market value of the use of the truck furnished to appellee lies in the testimony of appellee that he figured his pay to be $60.00 to $65.00 per week. This testimony was received over the objection that it constituted a conclusion. We erroneously stated that no point had been presented complaining of this action of the trial court. A sufficient point was presented.

Under the peculiar fact situation involved here, the answer to the question necessarily was a conclusion on the part of the witness. It is undisputed that his money wage was $100.00 per month. To reach the weekly wage testified, appellee necessarily had to include his estimate either of the worth to him of the lodging and truck, or of the market value of the lodging and the privilege of using the truck. The objection should have been sustained.

On reconsidering the question, we have determined that there is no competent evidence to sustain the wage rate found by the jury. Article 8309, Sec. 1(4), Vernon's Ann.Civ.St., provides that wages shall include the market value of lodging, and other advantages which can be estimated in money, which the employee receives from the employer as a part of his remuneration. We have concluded that the testimony of appellee above mentioned constitutes no evidence of the market value of the privilege of using the truck. Accordingly the answer made by the jury to Special Issue 14 is excessive, and is not supported by competent evidence.

The motion for rehearing is granted, and the judgment of the Trial Court is reversed and the cause is remanded for a new trial.